Forrest L. KENNEDY, Petitioner,

v.

Richard J. HYDE, et al., Respondent.

No. C–2930.

Supreme Court of Texas.

Dec. 12, 1984.

Rehearing Denied Jan. 9, 1984.

**526**

McGregor & White, Charles B. McGregor and Gregg White, Waco, for petitioner.

Law, Snakard, Brown & Gambill, Walker C. Firedman and Larry L. Worden, R.G. Guthrie, Fort Worth, for respondent.

ROBERTSON, Justice.

The question presented in this case is whether Texas Rule of Civil Procedure 11 bars enforcement of a disputed oral settlement agreement. Herman J. Smith sold capital stock in the Mansfield State Bank to a number of buyers, including Forrest L. Kennedy, Richard J. Hyde, and the other respondents in this cause. Subsequently, some of these purchasers, including Hyde, sued Kennedy and other defendants not appealing, seeking to recover interest paid to Smith for defendants' benefit. Kennedy counterclaimed and also brought a third party action against Smith, alleging misrepresentation in the original stock sale.

Thereafter, the parties to the suit met for depositions, but instead became involved in settlement discussions. These discussions resulted in the drafting, revisions and eventual signing of documents settling the suit. All parties save Kennedy ultimately signed these documents.

Smith, Hyde and the other plaintiffs then amended their pleadings, alleging that although Kennedy refused to sign any of the settlement documents, he had nonetheless entered into an oral contract of settlement. As amended, the pleadings introduced the oral settlement as a basis for affirmative relief, seeking damages for breach of contract or specific performance. The oral agreement was also pleaded as a defense to

Kennedy's claims, on theories of accord and satisfaction, novation, waiver and estoppel, among others. Kennedy likewise amended his pleadings to deny entering into any settlement agreement, and to point out the noncompliance of any alleged agreement with Rule 11 of the Texas Rules of Civil Procedure.

The trial court ordered a separate trial on the existence and validity of the alleged oral agreement. Pursuant to jury findings of an oral agreement to settle the lawsuit, the trial court rendered judgment against Kennedy, effectively enforcing the agreement according to its terms. The court of appeals affirmed, holding that Rule 11 does not prohibit the enforcement of disputed oral settlement agreements. 666 S.W.2d 325. We reverse the decisions of the courts below and remand the cause for trial.

For reasons soon apparent, a historical review of Rule 11 is in order. Tex.R.Civ.P. 11 states:

> "No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

This rule is not of recent origin, but can be traced in substantially its present form to District Court Rule 28, adopted in 1840 under the laws of the Republic of Texas, 1 Tex. 849, 852 (1848), and recodified as District and County Court Rule 47 in 1877 by authority of article V, section 25 of the Texas Constitution. *See* 47 Tex. 597, 625 (1877).[1]

The original rationale for the rule was stated cogently in *Birdwell v. Cox*, 18 Tex. 535, 537 (1857).

> "Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence

---

1. Rule 47 was amended in 1892 by adding the phrase "or unless it be made in open court and entered of record." 84 Tex. 695, 715. The portion of Tex.R.Civ.P. 11 at issue in this cause, though, is unchanged since 1877.

there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety. The rule is a salutary one, and ought to be adhered to whenever counsel disagree as to what has transpired between them."

The requirement of a writing in District and County Court Rule 47 was litigated extensively. *See generally* L. Smoot, *Annotated Rules of the Court of Texas* 463–65 (1932). In *Wootters v. Kauffman*, 67 Tex. 488, 3 S.W. 465 (1887), the trial court refused to permit evidence of an oral stipulation of facts. In affirming, this court stated the general rule: "The agreement was oral, and ... cannot be deemed a written agreement, as required by the rules of practice prescribed by this court.... Not being in writing, it cannot be enforced as an agreement." *Id.* at 495–96, 3 S.W. at 467.[2]

*Matthews v. Looney*, 132 Tex. 313, 123 S.W.2d 871 (1939), is illustrative of court interpretation of old Rule 47, and is in many respects similar to the instant cause. The parties to a will contest already set for trial appeared in court and announced that a settlement had been reached. The trial judge duly made a docket notation of "judgment by agreement." In preparing the consent decree, though, differences of opinion between the attorneys began to appear. Although testimony was conflicting, the Commission of Appeals noted, "[O]ne thing stands out as certain: No formal decree signed by attorneys for all parties was ever presented to the court for approval, or to the clerk for entry." 132 Tex. at 316, 123 S.W.2d at 872.

A motion for entry of judgment nunc pro tunc was then filed, with an unsigned form of judgment attached. This form, movants

alleged, "contained the terms of the agreement which the parties had made at the time of the announcement in open court of settlement." *Id.*

The description of the action then taken by the *Matthews* trial court closely parallels the procedure followed in the trial of this cause.

"On July 13, 1935, trial was had upon the motion to enter judgment. Much testimony, consisting largely of that of interested attorneys, was taken. This testimony appears to have related almost altogether to negotiations and discussions between attorneys prior to the announcement in court, and for some months thereafter. From this testimony it appears that the court manifestly was trying the question of whether or not there had ever been an agreement reached by the parties, and was attempting to reach a conclusion as to the terms of the agreement which they had actually made.... On one or more points the evidence of the attorneys was contradictory and conflicting."

132 Tex. at 316, 123 S.W.2d at 872.

The Commission of Appeals refused to treat the lower court decision as a judgment nunc pro tunc, observing that "[t]he purpose is to enter a so-called judgment by agreement not evidenced by written decree when announcement of settlement was made, and not made in open court in an enforceable manner." 132 Tex. at 317, 123 S.W.2d at 872. The Commission of Appeals reversed the decisions of the courts below and remanded for a trial on the merits, holding that "the agreed judgment, if actually orally consummated, was not announced in all of its essential details in open court, and was not 'entered of record.'" 132 Tex. at 319, 123 S.W.2d at 873.

A final Rule 47 case bears mention. In *Foster v. Gossett*, 17 S.W.2d 469 (Tex.Civ.

---

**2.** The opinion notes that the oral agreement was "incorporated in the statement of facts which was signed by the counsel for the purpose of appealing from the former judgment." 67 Tex. at 495–96. The opinion, however, antedates the

1892 revision adding "or unless it be made in open court and entered of record" to the rule. The South Western Reporter version of the case contains a printing error, as it substitutes "unsupported" for "incorporated." 3 S.W. at 467.

App.—Texarkana 1929, writ dism'd), the court of civil appeals held that evidence of a settlement agreement was properly excluded, concluding that "the compromise offer referred to *was made* by attorneys representing parties to the suit *and accepted* by attorneys representing other parties thereto, and that same was *not enforceable because not evidenced as required by Rule 47* for the government of district and county courts." *Id.* at 470 (emphasis added).

Rule 11 of the Texas Rules of Civil Procedure became effective on September 1, 1941. By its wording, Rule 11 mandates that "[n]o agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing ...." The rule has been held applicable to a wide variety of agreements concerning lawsuits, including stipulations as to the testimony of absent witnesses, *Austin v. Austin,* 603 S.W.2d 204 (Tex.1980), and agreements to limit the issues in dispute. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979); *see also* 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 10.12.3 n. 6 (1983). On at least two recent occasions, this court has strongly implied that a settlement agreement is also to be judged by Rule 11 standards. *Williams v. Hollingsworth,* 568 S.W.2d 130, 131 (Tex.1978); *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292, 292 (Tex.1976).

The court of appeals in the instant case attempts to avoid application of Rule 11 by making a fine distinction, stating that "the purpose of rule 11 is to authorize rendition of agreed judgments." 666 S.W.2d at 327. As we understand the opinion, an agreement in compliance with Rule 11 would authorize an agreed judgment on the merits of the underlying suit. An agreement in violation of Rule 11 would support the same result in the same suit. The sole distinction would be that in the latter case, the judgment would recite that it was based on breach of the contract to settle the suit, rather than incorporating the terms of the contract to settle the suit.

Given this interpretation, no "agreement between attorneys or parties touching any suit pending" need comply with Rule 11. For example, since any stipulation could be characterized as a contract, *see, e.g., Keller Industries, Inc. v. O.O. Reeves,* 656 S.W.2d 221, 228 (Tex.App.—Austin 1983, writ ref'd n.r.e.), any stipulation failing to comply with Rule 11 could nonetheless be enforced as a contract.

This court will not eviscerate Rule 11. Nor does the authority cited by the court of appeals support such a narrow interpretation. In *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951), this court refused to sanction a consent judgment where consent was withdrawn prior to rendition of judgment. The agreement in *Burnaman,* however, complied with the requirements of Rule 11. The face of the opinion in *Stewart v. Mathes,* 528 S.W.2d 116 (Tex. Civ.App.—Beaumont 1978, no writ) does not reveal whether the agreement complied with Rule 11, nor was the rule mentioned in the court of civil appeals' opinion. Neither opinion speaks authoritatively to the question of enforcing a settlement agreement *not* in compliance with Rule 11.

It is not surprising to find discussion of Rule 11 and settlement agreements in appeals challenging consent judgments, as such a judgment is a normal method of effectuating a settlement. This does not, however, warrant the court of appeals' conclusion that "the *purpose* of rule 11 is to authorize rendition of agreed judgments only if the agreement for judgment is memorialized...." 666 S.W.2d at 327 (emphasis added).

■ A better statement of the general rule is that Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits, including, but not limited to, agreed judgments. *Burnaman* stands for the proposition that, notwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered. *See also Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442 (Tex.1983); *Samples Exterminators v. Samples,* 640 S.W.2d 873 (Tex.1982); 4 R.

McDonald, *Texas Civil Practice in District and County Courts* § 17.22 (1971). *Matthews v. Looney,* 132 Tex. 313, 123 S.W.2d 871 (1939), demonstrates that an agreement not in compliance with the rule will not support a consent judgment. Thus it may be said that as a general rule compliance with Rule 11 is necessary, but not sufficient for an agreed judgment. The clear language of the rule indicates, and this court holds, that compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit.

It has been suggested that such a holding would abridge the substantive law of contracts and thus exceed the rule-making authority granted in Tex.Rev.Civ.Stat.Ann. art. 1731a (Vernon 1962). Article 1731a does provide that rules of procedure "shall not abridge, enlarge or modify the substantive rights of any litigant." Rule 11 might be said to affect a substantive right by rendering certain oral contracts (i.e., those touching a pending suit) unenforceable in certain contexts (i.e., unless made in open court).

Whether this restriction actually abridges a substantive right is problematical. As the United States Supreme Court observed, albeit in a somewhat different context, "[t]he line between 'substance' and 'procedure' shifts as the legal context changes." *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965). "Each implies different variables depending upon the particular problem for which it is used." *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945).

■ In this case, however, the issue is easily resolved without addressing such thorny questions in detail. Article 1731a gave the Texas Legislature the power to disapprove any rule it chose. Tex.Rev.Civ. Stat.Ann. art. 1731a, sec. 2. As already discussed, the predecessor rule had an extensive gloss of judicial interpretation upon it, and decisions like *Birdwell, Matthews* and *Foster* clearly presage the result in the instant cause. The legislature may reason-

ably be presumed to have been aware of these decisions construing the old rule and to have consented to those interpretations by approving identical language in Rule 11. *Cf Coastal Indus. Water Auth. v. Trinity Portland Cement Div., Gen'l Portland Cement Co.,* 563 S.W.2d 916 (Tex.1978) (reenactment of statute implies acquiescence in judicial interpretation of predecessor statute).

■ Our holding, that Rule 11 means precisely what it says, should not be interpreted as requiring "slavish adherence" to the literal language of the rule in all cases. *Sone v. Braunig,* 469 S.W.2d 605, 611 (Tex. Civ.App.—Beaumont 1971, writ ref'd n.r. e.). To the contrary, there are well recognized exceptions to the rule in this state, and in other jurisdictions with similar requirements. *See generally* Annot., 7 A.L. R.3d 1394 (1966). For example, an undisputed stipulation may be given effect despite literal noncompliance with the rule. *Thomas·v. Smith,* 60 S.W.2d 514, 516 (Tex. Civ.App.—Texarkana 1933, writ dism'd). Likewise, an agreement in compliance with the rule is subject to attack on the grounds of fraud or mistake, *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951), and a nonconforming agreement may be enforced for similar equitable reasons. *Williams v. Huling,* 43 Tex. 113, 120 (1875). Quite recently, this court has interpreted the requirements of Rule 11 liberally to conform to modern trial practice. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

■ In determining whether a particular situation warrants an exception to Rule 11, an examination of the policy behind the rule is always paramount. *Fidelity & Cas. Co. of N.Y. v. McCollum,* 656 S.W.2d 527 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The reason for Rule 11 is clear. As already observed, oral agreements concerning suits "are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies." *Birdwell,* 18 Tex. at 537.

"The purpose of this rule is evident, and its wisdom will be readily conceded. Agreements of counsel in the course of a judicial proceeding which affect the interests of their clients should not be left to the fallibility of human recollection. *This is especially true with reference to agreed judgments which finally dispose of the rights of the litigants.*"

*Wyss v. Bookman,* 235 S.W. 567, 569 (Tex. Comm'n App. 1921, holding approved) (emphasis added).

The rationale underlying Rule 11 is sensible and contributes to efficient court administration. Agreements and stipulations are welcomed by courts because they limit the matters in controversy and expedite trial proceedings. Rule 11 ensures that such agreements do not themselves become sources of controversy, impeding resolution of suits. The requirements of Rule 11 are not onerous; the benefits are substantial.

The instant case illustrates the wisdom of the rule. The purported oral settlement agreement with Forrest Kennedy could easily have been reduced to writing and signed. In fact, all other parties to the suit did sign agreements comporting with Rule 11. Forrest Kennedy's pleadings clearly, emphatically and unequivocally denied entering into an oral settlement agreement. Nonetheless, the existence and terms of the alleged agreement were litigated, consuming some six days of court time and generating well over $100,000 in attorneys' fees on a $12,000 claim.

Respondents attempt to bring this case within an exception to Rule 11 by claiming that the oral agreement is "undisputed." They point this court to reams of testimony and eventual favorable jury findings. This argument begs the question. The oral agreement was disputed and unenforceable at the moment its existence was denied in the pleadings; Rule 11 prohibits further inquiry.

While judicial efficiency and the wish to avoid disputes over the credibility of opposing counsel may well have been the original rationale for Rule 11's requirements, changing times provide an additional bene-fit from the rule. In a day of burgeoning litigation and crowded dockets, the amicable settlement of lawsuits is greatly to be desired. This court has recognized both a public policy favoring settlements and the need for reasonable safeguards on the settlement process. *See, e.g., Cypress Creek Utility Service Co., Inc. v. Muller,* 640 S.W.2d 860 (Tex.1982); *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex. 1977). Similar considerations are present in this case. A requirement that an out-of-court settlement be memorialized by a writing should aid the settlement process, permitting free and frank discussion and negotiation without fear that a careless word or mistake of meaning will itself become the basis for further litigation.

For the reasons stated, we reverse the judgments of the courts below and remand the cause for trial.

GONZALEZ, J., dissents with opinion that is joined by WALLACE, J.

GONZALEZ, Justice, dissenting.

I respectfully dissent. I am of the opinion that the court of appeals rendered the correct judgment and that the writ should be dismissed as improvidently granted. Tex.R.Civ.P. 500.

I perceive a fundamental difference between an agreement concerning a suit and a suit concerning an agreement. In my judgment, Tex.R.Civ.P. 11 does not apply to an oral agreement concerning a suit when a party does not in good faith dispute the terms of that agreement. Since neither Kennedy nor his first attorney, who negotiated the settlement disputes the terms of the agreement, I am puzzled by my colleagues' characterization of this case as one involving a "disputed" agreement. The only dispute concerns Kennedy's refusal to be bound by the agreement.

The lack of dispute is evident in some brief excerpts of Kennedy's deposition which were introduced into evidence in his trial in 1982.

(Questions by Attorney Friedman, representing Herman Smith, Third Party Defendant):

Q Did you have any question in your mind about what you were doing when you agreed to settle; that is, you understood that you were agreeing to pay twelve thousand dollars that would end this lawsuit, as far as you knew; your claims and the claims against you? You understood that, didn't you.?

A Yes. (S.F., p. 45)

   •    •    •    •    •

Q ... But, when you left there that day, you believed it was settled and that there were no suits pending, going to be pending by you, or against you, as a result of the matters involved in this litigation, didn't you?

A I presumed that was the case that day.

Q. Well, you know it was the case, don't you?

A I presume so. I didn't question it.

Q You had agreed to execute a promissory note, and to relinquish all of your claims against everybody else, and they had agreed to relinquish them against you, in so far as this lawsuit is concerned.

So, you thought the whole thing was over, didn't you?

A Providing that it all came about, then I would say, 'Yes'. But, I had no assurance that it was all going to come about.

Q But, none of the terms that were eventually presented by way of the promissory note, or the Dismissal, or the Mutual Release were objectionable to you, were they?

A No, I did not object to the terms. (S.F., pp. 48–49)

   •    •    •    •    •

Q ... Okay, Dr. Kennedy. If you take it all down to the basic facts, and don't pay any attention to all of the legal technicalities at this point, what happened was, really, you agreed to settled (sic) on that date by executing a twelve thousand dollar promissory note, and by agreeing to execute dismissal and releases of all lititation involved, and then you subsequently "changed your mind, and decided not to do that at a later date, didn't you?

A Yes. With—with the thought in mind that in the period of time as it went on, I did have a change of mind. (S.F., pp. 52–53).

   •    •    •    •    •

Q Now, in reference to the fact that as you've mentioned awhile ago, that after the agreement had been reached, and so forth, that you, in fact, changed your mind. I'm talking about the October 5, 1978 transaction.

If you hadn't changed your mind, you probably would have gone and signed the papers along with everybody else, isn't that right?

A Yes, probably. (S.F., p. 54)

   •    •    •    •    •

Q Okay, admit or deny this: That you agreed to execute a promissory note in the amount of twelve thousand dollars, payable to the Plaintiffs herein in the presence of Carl G. Quisenberry in exchange for all parties to the lawsuit at that time agreeing to relinquish all claims to each other arising from the subject matter of this litigation?

A As of precisely that date that's true, but of course, as we testified earlier, there were a lot of reservations and discussions, but as of precisely that date, I would say yes. (S.F., p. 59).

   •    •    •    •    •

Q And, you testified earlier, they subsequently handed you the documentation, and you didn't read it, you just told them you weren't going to do it, is that right?

A That's true. I had already told them previously that I was not going to do it.

Q And, so the documentation didn't have a thing to do with it, did it?

A No." (S.F., p. 60).

   •    •    •    •    •

Q —What did you intend when you, as you say, 'reluctantly', agreed to settle on the terms we discussed in Carl Quisenberry's office in October of '78, what did you intend?

A I intended to settle, provided that I found no other choice open, or nothing else. In fact, I asked him about taking it on a different arrangement.

As you may recall I had gone from a one-third fee splitting arrangement, and after the others agreed to settle, it left me with a three-thirds bill, which changed the whole complexion of economics in pursuing a lawsuit. So, reluctantly I had agreed to settle finally because I had no place to turn at that moment. (S.F., pp. 66–67).

. . . . .

As the court correctly recognizes, the purpose of Rule 11 is to require that agreements concerning suits "not be left to the fallibility of human recollection." *Wyss v. Bookman*, 235 S.W. 567 (Tex.Comm'n App. 1921, holding approved); *Matthews v. Looney*, 132 Tex. 313, 319, 123 S.W.2d 871, 873 (1939). This is not a suit to construe the language of an unclear agreement, or one in which the court would be forced to supply absent terms. *See Sergeant v. Goldsmith Dry Goods Co.*, 110 Tex. 482, 221 S.W. 259 (1920). The excerpts from Kennedy's own testimony reveal that the terms were not in dispute. It is, therefore, my opinion that the underlying purpose of Rule 11 has been satisfied.

In *Birdwell v. Cox*, 18 Tex. 535, 537 (1857) this court stated that the rule requiring agreements concerning causes to be in writing "is a salutary one, and ought to be adhered to *whenever counsel disagrees as to what has transpired between them.*" (emphasis added). Further, this court has stated that the enforcement of an oral agreement lies within the discretion of the trial court, and such an agreement may be enforced to prevent unjust enrichment. *Jenkins v. Adams*, 71 Tex. 1, 8 S.W. 603 (1888). *Williams v. Huling*, 43 Tex. 113 (1875). Where the terms of an oral agreement or stipulation are undisputed or expressly admitted, the agreement should be enforceable even in the absence of a writing.

The court states that this case closely parallels *Matthews v. Looney*, 123 S.W.2d 871. This reliance is misplaced because in *Matthews* there was a dispute between the parties and the attorneys that negotiated the agreement as to the terms of the agreement. There is no such dispute by the parties in our case.

To buttress its opinion, the court says that the "purported oral settlement agreement with Kennedy could easily have been reduced to writing and signed." This assumption ignores the practical realities of modern trial practice. There is nothing easy about settling a multi-party, multi-suit controversy where charges and counter-charges have been exchanged. Suits are generally settled on broad terms on a "gentleman's agreement." Out-of-state witnesses may be released and juries discharged while the lawyers commence the process of drafting and getting the necessary signatures on the documents. Thereafter, the parties must arrange for court approval of the agreement. It is virtually impossible to complete these tasks in the space of one day or even a week. In a case such as this the process often takes several months.

This case has already been tried once to a jury. The jury answered special issues against Kennedy, and the trial court rendered judgment against him. The court of appeals correctly affirmed the judgment of the trial court. Once the announced purpose of Rule 11 has been satisfied, further adherence to its literal requirements becomes a "slavish adherence" to empty legal technicalities. I cannot condone the nullification by the majority of the results of a six day trial and a subsequent appellate review to require compliance with a procedural rule which, in this case, serves no apparent purpose. I would allow enforcement of this oral agreement and bring this matter to an end, avoiding further costly trials and appeals on this six-year old claim.

It used to be that a man's word was his bond. I regret that the court's opinion facilitates a further erosion of this value.

WALLACE, J., joins in this dissenting opinion.