# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00715-CV

**Scott Roeglin/Sandra Daves and Alfred Daves, Appellants**

**v.**

**Sandra Daves and Alfred Daves/Scott Roeglin, Appellees**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
NO. 23,317-A, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING**

The district court found that there was a valid and enforceable Rule 11 agreement by which appellants Alfred and Sandra Daves (together Athe Daves@) agreed to settle their claims against appellee Scott Roeglin (ARoeglin@) for injuries suffered by Alfred Daves in an automobile collision, in exchange for payment by Roeglin=s liability insurance carrier of its policy limits. *See* Tex. R. Civ. P. 11. After a hearing, the court rendered an interlocutory order granting Roeglin=s motion to enforce the agreement, dismissing the claims of the Daveses and Universal Underwriters Insurance Company (AUniversal@), Alfred Daves=s employer=s worker=s compensation insurance carrier, against Roeglin, and denying Roeglin=s request for attorney=s fees. The district court then severed the matters determined by the interlocutory order and

rendered a final appealable judgment.[1] The Daveses appeal, asserting that there is no agreement.[2] Roeglin appeals the denial of attorney=s fees. We will reverse in part and affirm in part the district-court judgment.

## THE DISPUTE

*Factual Background*

On March 19, 1999, Alfred Daves sustained serious injuries when a vehicle in which he was a passenger was involved in a collision with Roeglin. Because Daves was injured in the course and scope of his employment, Universal began paying Daves=s medical expenses. At the time of this dispute, Universal had made payments to or on behalf of Alfred Daves in excess of $55,000.

Sandra Daves initiated this action against Roeglin, alleging damages for loss of consortium as a result of the injuries to her husband. Initially, Alfred Daves was not a plaintiff. When Universal learned of Sandra Daves=s suit, it intervened, asserting a subrogation claim. In an amended petition, Alfred Daves

---

[1] The interlocutory order was signed by Judge Tom McDonald. The severance order was signed by Judge H.R. Towslee

[2] Universal does not appeal. In a March 26, 2002 AAmended Rule 11 Agreement@ with the Daveses, Universal acknowledges that A[t]he insurance carrier of . . . Roeglin has paid Universal . . . the sum of $18,020.70 in settlement of Universal[=s] . . . subrogation claim for injuries caused by . . . Roeglin to Alfred Daves.@

joined Sandra Daves as a plaintiff and named State Farm Mutual Automobile Insurance Company (AState Farm@), the Daveses= uninsured/underinsured motorist (AUIM@) insurance carrier, as an additional defendant. The Daveses and Universal soon discovered that Roeglin=s liability insurance was limited to $20,023, substantially less than Universal=s subrogation claim. The attorneys for the Daveses and Universal then commenced discussions concerning the apportionment of Roeglin=s liability insurance.

A series of letters resulted, the first between the Daveses and Universal, followed by correspondence from Universal to Roeglin and Roeglin to Universal and the Daveses. Roeglin asserts, and the district court agreed, that these letters, collectively, constitute a valid and enforceable Rule 11 agreement among the Daveses, Roeglin, and Universal, providing, *inter alia*, for the dismissal of the Daveses=damage claims against Roeglin. The Daveses contend that they never had an agreement with Roeglin, and any agreement reflected by the letters was only between themselves and Universal.

As is germane to this dispute, Texas Rule of Civil Procedure 11 provides that Ano agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record.@ Tex. R. Civ. P. 11. A series of letters among attorneys or parties to litigation may constitute an agreement in writing satisfying Rule 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995).

### *The Letters*

The alleged agreement consists of nine letters. The letters are all among the attorneys for the Daveses, Universal, and Roeglin. For ease in understanding, however, we will, with the exception of the

final letter, refer to them as if written by the parties. As a threshold matter, we note that no one letter is signed by all parties, the attorneys for all parties, or any combination of all parties and their attorneys.

The first letter, from the Daveses to Universal dated October 26, 2000, is apparently in response to a letter the previous day from Universal to the Daveses that is not before us. Signed by the Daveses, their attorney, and the attorney for Universal, it provides, in pertinent part:

> This letter, when agreed to by all parties by signing below, will confirm settlement of disputes *between Universal . . . and [the] Daves[es]*, in regards to claims by both Universal . . . and/or [the] Daves[es] against . . . Roeglin and State Farm . . . and any other insurance company issuing UIM coverage, in effect at the time of the automobile accident made the basis of the above styled suit, as follows:
>
> 1. All proceeds received from the insurance carrier of . . . Roeglin, in payment of any claims asserted by either Universal. . . and/or [the] Daves[es] against . . . Roeglin shall be split ninety percent (90%) to Universal . . . and ten percent (10%) to [the] Daves[es].

(Emphasis added.) The letter goes on to address the division of UIM and future worker=s compensation insurance proceeds that might be recovered by virtue of claims by the Daveses as well as other damages that might be recovered by the Daveses against State Farm. Neither Roeglin nor his insurer is an addressee or signatory of the letter. The letter contains no signature line for Roeglin or his attorney and does not reflect that either was forwarded a copy.

On November 15 Universal wrote Roeglin, advising that AUniversal . . . has reached a settlement agreement with Sandra Daves . . . . Universal . . . will receive 90% of the tendered policy limits

4

of $20,023.00 which equates to $18,020.70.@[3] Universal requested a Asettlement draft@ and stated it would Aexecute the appropriate settlement release upon receipt.@ This letter was not signed by the Daveses or their attorney and does not indicate that Universal sent them a copy.

Two months later, on January 16, 2001, Roeglin sent letters to the Daveses and Universal, each enclosing a proposed ARelease and Settlement Agreement,@ AAgreed Order of Dismissal,@ and a check drawn on the account of State and County Mutual Fire Insurance Company, Roeglin=s liability insurance carrier, dated December 12, 2000. The checks were payable $2002.30 to the Daveses and $18,020.70 to Universal. Universal signed a slightly revised settlement agreement on March 20. The agreement provided signature lines for Sandra Daves, Alfred Daves, and Universal, as well as signature lines for their attorneys to approve and agree to the document. The proposed order provided, *inter alia*, for the dismissal of all claims by the Daveses and Universal against Roeglin, and signature lines for the attorneys for all three parties to approve the order.

On April 2 Roeglin wrote the Daveses, inquiring if there was a problem with the agreement and when he might expect it to be executed.

On April 3 at the Daveses= request, Roeglin sent them a copy of the agreement as signed by Universal and requested that they likewise sign it.

---

[3] Although Alfred Daves had signed the October 26 letter, he was not yet a party to the litigation. At this time, the only parties to the district-court suit were Sandra Daves, Roeglin, and Universal. APlaintiff=s First Amended Original Petition,@ adding Alfred Daves as a plaintiff and State Farm as a defendant, was not filed until January 4, 2001. This does not affect our determination of the issues before us.

An April 16 letter from Universal to Roeglin forwards the original agreement and proposed order of dismissal, signed by Universal.

The final letter, dated April 25, 2001, from Roeglin=s attorney to the Daveses= attorney, reads as follows:

> I am enclosing a copy of the Release and Settlement Agreement executed by the authorized representative of Universal . . . .
> You indicated that once [Universal] approved and executed the Release and Settlement Agreement, that you would have [the Daveses] do likewise. Would you please have [the Daveses] approve and execute the Release Agreement.
>
> I am also enclosing a copy of the Agreed Partial Order of Dismissal With Prejudice. The Order has been approved and signed by [Universal]=s counsel. Would you please do likewise.
>
> After doing so, please return to me the signature pages, along with the verification pages. I will then combine the signature and verification pages into one document, returning to you a copy. I will then file the Order with the court and provide to you a conformed copy.
>
> Should you have any questions, please do not hesitate to call me.

Neither the Daveses nor their attorney signed any of the documents provided by Roeglin.

The October 26, 2000 letter was originally filed with the district-court clerk on November 20, 2000 as a Rule 11 agreement between the Daveses and Universal. The other eight letters were filed with the clerk on September 13, 2001 as exhibits to Roeglin=s motion to enforce the alleged settlement agreement with the Daveses.

Relying on *Padilla*, 907 S.W.2d at 460, and all the letters taken together, Roeglin asserts that the district court Aproperly ruled that there was a valid and enforceable Rule 11 agreement whereby the

6

Daveses agreed to settle their claims with . . . Roeglin in exchange for payment of Roeglin=s insurance carrier=s policy limits of $20,023.@

## DISCUSSION AND ANALYSIS

### *The Daveses=Appeal*

If there is to be a Rule 11 agreement between the Daveses and Roeglin, its substance must be determined by the October 26 letter between the Daveses and Universal, as the remaining eight letters are no more than cover letters or attempts by Roeglin to confirm an alleged settlement between him and the Daveses as described in the initial letter. That letter is as significant for its exclusions as its inclusions. It is neither addressed to nor contains the signature of Roeglin, his attorney, or his insurer, makes no reference to the amount of Roeglin=s insurance, does not state that the Daveses will release Roeglin from liability to them, and does not state that the Daveses and Roeglin are settling their dispute. The letter does not reference a tender of policy limits by Roeglin=s insurer or whether Roeglin has other assets from which either the Daveses or Universal might satisfy their claims. It does not state that the district-court suit will be dismissed.

The parties to the letter are the Daveses and Universal. The letter confirms the settlement of disputes between Universal and the Daveses. The letter, although three pages long, contains but two references to Roeglin. The first confines the settlement between the Daveses and Universal *to their disputes* arising from claims they may have against Roeglin. The second describes the proportion in which the Daveses and Universal will divide insurance proceeds received from Roeglin=s insurance carrier.

The supreme court has held that Rule 11 Ais a general prerequisite for any judgment enforcing an agreement touching a pending suit,@ and means Aprecisely what it says.@ *Kennedy v. Hyde*,

7

682 S.W.2d 525, 529 (Tex. 1984); *Ebner v. First State Bank*, 27 S.W.3d 287, 293 (Tex. App.CAustin 2000, pet. denied). AA settlement agreement must comply with Rule 11 to be enforceable.@ *Padilla*, 907 S.W.2d at 460 (citing *Kennedy*, 682 S.W.2d at 528). The court has analogized the Ain writing@ requirement of Rule 11 to the statute of frauds. *Id.* at 460 (citing Tex. Bus. & Com. Code Ann. ' 26.01 (West 1987)). The writing must contain Athe essential elements of the agreement.@ *Id.* (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)). Although the written memorandum must be Acomplete within itself in every material detail,@ *id.*, it may be in multiple documents. *Id.* (citing *Adams v. Abbott*, 254 S.W.2d 78, 80 (Tex. 1952)).

The October 26 letter, standing alone, cannot satisfy Rule 11 because it does not contain the signature of Roeglin or his attorney. *See* Tex. R. Civ. P. 11. Likewise, the letter=s failure to address whether the Daveses would release Roeglin from liability and the dismissal of the Daveses= suit against Roeglin renders it lacking the completeness required by Rule 11. *See Padilla*, 907 S.W.2d at 460. For there to be a valid and enforceable Rule 11 agreement that will support the district-court judgment, these elements must be provided by the later letters.

Initially, we observe that the multiple-writings scenario presented here is much different from that examined by the supreme court in *Padilla*. In *Padilla*, the LaFrances sued Padilla for damages arising from an automobile collision. *Id.* at 455. Padilla=s insurer assumed defense of the claims. *Id.* at 455-56. On April 10 Steidley, the LaFrances= attorney, made written demand on Chandler, Padilla=s attorney, Afor policy limits . . . for full and final settlement of this case,@ specifically instructing that the sum should be paid on or before 5:00 p.m. on April 23. *Id.* at 456. Steidley=s demand went on to say, AI look forward to

8

*receipt* of the checks on or before [the] date specified, failing which this offer to settle will be withdrawn.@ *Id.* Chandler forwarded the letter to Bradshaw, the insurance adjuster handling the claim, who telephoned Steidley=s office and advised of a medical lien Athat needed to be cleared up in connection with the settlement.@ *Id.* Bradshaw did not speak with Steidley himself, and called back two more times, each time being told by a person other than Steidley that Athe lien had not yet been resolved.@ *Id.* Bradshaw=s last call was the morning of April 23. *Id.* When he had heard nothing by that afternoon, Bradshaw faxed a letter to Steidley confirming the settlement agreement whereby the insurer Aagreed to meet the policy limit demands set out in your letter of [April 10].@ *Id.* Bradshaw went on, AI await word from you regarding the lien so I know to whom to make [the] drafts payable.@ *Id.* Before 5:00 p.m., Steidley faxed Bradshaw, confirming settlement Afor all applicable policy limits,@ requesting that Asettlement checks@ be forward to him, and advising that Steidley=s Aoffice will . . . take care of the lien . . . out of the settlement funds forwarded by [Bradshaw=s] office.@ *Id.* Bradshaw did not see Steidley=s fax until the next morning, April 24. *Id.* Approximately one week later, Chandler tendered settlement checks for the policy limits to Steidley, who refused them, Acontending that Padilla had not timely accepted the April 10 settlement offer.@ *Id.* at 456-57.

The supreme court reversed the court-of-appeals judgment affirming the trial-court holding in favor of the LaFrances, stating that the evidence Aestablished an enforceable settlement agreement as a matter of law.@ *Id.* at 462. Central to the court=s holding was the April 23 exchange of faxes between Bradshaw and Steidley. The court observed that Bradshaw specifically confirmed a A>settlement agreement= between the parties . . . [but] noted uncertainty as to one detail, payment of the hospital lien, and requested

9

guidance from Steidley.@ *Id.* at 460. The court held that when Steidley responded that the LaFrances would pay the lien out of the settlement funds, Aspecifically stating that >[t]his letter will confirm that the above referenced matter *has been settled* for all applicable policy limits . . . ,=@ he Aassented to Padilla=s alteration of the mode of acceptance set out in Steidley=s original offer. Rather than requiring actual payment by a particular deadline, Steidley accepted Padilla=s *agreement* to pay policy limits as acceptance of his earlier offer.@ *Id.*

The difference between *Padilla*=s facts and those now before this Court are readily apparent. *All* of the *Padilla* correspondence was between the plaintiffs= attorney, on the one hand, and either the defendant=s attorney or his insurer on the other. Here the initial correspondenceCthe October 26 letterCwas between the attorney for the plaintiffs (the Daveses) and the attorney for the worker=s compensation insurance carrier for one plaintiff=s (Alfred Daves=s) employer. None of the following eight letters was signed by the Daveses or their attorney and none reflects an agreement between the Daveses and Roeglin that the Daveses would accept a specified sum of money from Roeglin, release him, and dismiss their suit against him.

The exchange of correspondence among the parties reflects no more than the following: (1) an agreement between the Daveses and Universal as to how to divide any insurance proceeds received from Roeglin=s insurer (the October 26 letter); (2) Universal=s unilateral notification to Roeglin that it would accept ninety percent of the limits of Roeglin=s liability insurance and settle with Roeglin (the November 15 letter); (3) Roeglin=s presumption that the Daveses would accept the remaining ten percent of Roeglin=s insurance and release Roeglin (the January 16 letters). The remaining letters constitute, at best, only an

10

argument between counsel concerning whether there was a settlement between the Daveses and Roeglin. The evidence adduced before the district court at the hearing on Roeglin=s motion to enforce the alleged agreement comprises little more than each attorney=s Aspin@ on the post-January 16 correspondence and what was said between them regarding it.  The elimination of such bickering is the goal of current Rule 11. *See Kennedy*, 682 S.W.2d at 526-29 (describing history and purpose of Rule 11).  We hold as a matter of law that there is no agreement between the Daveses and Roeglin that satisfies the requirements of Rule 11.

Roeglin asserts, however, that equity may excuse strict compliance with Rule 11 to prevent Aan unfair advantage by the violation of such agreement.@ *Williams v. Huling*, 43 Tex. 113, 120 (1875). Indeed, this Court has recognized that *Williams* may provide such an exception.  *See Ebner*, 27 S.W.3d at 298-99.  In *Kennedy*, the supreme court indicated that an agreement that does not conform to the requirements of Rule 11 might, for equitable reasons, be enforced because of fraud or mistake.  *Kennedy*, 682 S.W.2d at 529 (citing *Burnaman v. Heaton*, 240 S.W.2d 288 (Tex. 1951); *Williams*, 43 Tex. at 120).  In *Ebner*, we did not explore the possible boundaries of a *Williams-Kennedy* equitable exception because the trial court had decided the case on competing motions for summary judgment.  *Ebner*, 27 S.W.3d at 290.  We reversed the trial-court summary judgment and remanded the cause, specifically noting that the lack of one party=s signature on an alleged Rule 11 agreement could be Aurged@ at trial.  *Id.* at 304 (citing *Williams*, 43 Tex. at 120).

The reporter=s record in the case now before us is not lengthy and, as we have previously noted, consists solely of the testimony of attorneys for Roeglin and the Daveses.  It contains no evidence of fraud, mistake, or unfair advantage, which would allow a court to equitably provide either the signature or

11

completeness required by Rule 11 and pronounce a settlement agreement between the Daveses and Roeglin.

We sustain the Daveses= issue.

### *Roeglin=s Appeal*

Roeglin, analogizing his motion to enforce the alleged Rule 11 agreement to a breach-of-contract suit, also appeals, asserting that the district court erred in failing to award him attorney=s fees. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (West 1997) (providing for recovery of reasonable attorney=s fees for claim based on contract). Because we have held that there was no agreement between Roeglin and the Daveses, we consider Roeglin=s issue no further and overrule it.

### CONCLUSION

Because we have held that there is no Rule 11 agreement between the Daveses and Roeglin, we reverse the district-court judgment insofar as it dismisses the Daveses= action against Roeglin and remand that portion for further proceedings consistent with this opinion; in all other respects, we affirm the judgment.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

12

Affirmed in Part; Reversed and Remanded in Part

Filed:   July 26, 2002

Publish