TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00715-CV







Scott Roeglin/Sandra Daves and Alfred Daves
, Appellants




v.




Sandra Daves and Alfred Daves/Scott Roeglin
, Appellees







FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT


NO. 23,317-A, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING







 The district court found that there was a valid and enforceable Rule 11 agreement by
which appellants Alfred and Sandra Daves (together "the Daveses") agreed to settle their claims
against appellee Scott Roeglin ("Roeglin") for injuries suffered by Alfred Daves in an automobile
collision, in exchange for payment by Roeglin's liability insurance carrier of its policy limits. See
Tex. R. Civ. P. 11. After a hearing, the court rendered an interlocutory order granting Roeglin's
motion to enforce the agreement, dismissing the claims of the Daveses and Universal Underwriters
Insurance Company ("Universal"), Alfred Daves's employer's worker's compensation insurance
carrier, against Roeglin, and denying Roeglin's request for attorney's fees. The district court then
severed the matters determined by the interlocutory order and rendered a final appealable judgment. (1) 
The Daveses appeal, asserting that there is no agreement. (2) Roeglin appeals the denial of attorney's
fees. We will reverse in part and affirm in part the district-court judgment.


THE DISPUTE

Factual Background

 On March 19, 1999, Alfred Daves sustained serious injuries when a vehicle in which
he was a passenger was involved in a collision with Roeglin. Because Daves was injured in the
course and scope of his employment, Universal began paying Daves's medical expenses. At the time
of this dispute, Universal had made payments to or on behalf of Alfred Daves in excess of $55,000. 

 Sandra Daves initiated this action against Roeglin, alleging damages for loss of
consortium as a result of the injuries to her husband. Initially, Alfred Daves was not a plaintiff. 
When Universal learned of Sandra Daves's suit, it intervened, asserting a subrogation claim. In an
amended petition, Alfred Daves joined Sandra Daves as a plaintiff and named State Farm Mutual
Automobile Insurance Company ("State Farm"), the Daveses' uninsured/underinsured motorist
("UIM") insurance carrier, as an additional defendant. The Daveses and Universal soon discovered
that Roeglin's liability insurance was limited to $20,023, substantially less than Universal's
subrogation claim. The attorneys for the Daveses and Universal then commenced discussions
concerning the apportionment of Roeglin's liability insurance.

 A series of letters resulted, the first between the Daveses and Universal, followed by
correspondence from Universal to Roeglin and Roeglin to Universal and the Daveses. Roeglin
asserts, and the district court agreed, that these letters, collectively, constitute a valid and enforceable
Rule 11 agreement among the Daveses, Roeglin, and Universal, providing, inter alia, for the
dismissal of the Daveses' damage claims against Roeglin. The Daveses contend that they never had
an agreement with Roeglin, and any agreement reflected by the letters was only between themselves
and Universal.

 As is germane to this dispute, Texas Rule of Civil Procedure 11 provides that "no
agreement between attorneys or parties touching any suit pending will be enforced unless it be in
writing, signed and filed with the papers as part of the record." Tex. R. Civ. P. 11. A series of letters
among attorneys or parties to litigation may constitute an agreement in writing satisfying Rule 11. 
Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995).


The Letters

 The alleged agreement consists of nine letters. The letters are all among the attorneys
for the Daveses, Universal, and Roeglin. For ease in understanding, however, we will, with the
exception of the final letter, refer to them as if written by the parties. As a threshold matter, we note
that no one letter is signed by all parties, the attorneys for all parties, or any combination of all
parties and their attorneys.

 The first letter, from the Daveses to Universal dated October 26, 2000, is apparently
in response to a letter the previous day from Universal to the Daveses that is not before us. Signed
by the Daveses, their attorney, and the attorney for Universal, it provides, in pertinent part:


This letter, when agreed to by all parties by signing below, will confirm settlement
of disputes between Universal . . . and [the] Daves[es], in regards to claims by both
Universal . . . and/or [the] Daves[es] against . . . Roeglin and State Farm . . . and any
other insurance company issuing UIM coverage, in effect at the time of the
automobile accident made the basis of the above styled suit, as follows:



 All proceeds received from the insurance carrier of . . . Roeglin, in payment of
any claims asserted by either Universal. . . and/or [the] Daves[es] against . . .
Roeglin shall be split ninety percent (90%) to Universal . . . and ten percent
(10%) to [the] Daves[es].




(Emphasis added.) The letter goes on to address the division of UIM and future worker's
compensation insurance proceeds that might be recovered by virtue of claims by the Daveses as well
as other damages that might be recovered by the Daveses against State Farm. Neither Roeglin nor
his insurer is an addressee or signatory of the letter. The letter contains no signature line for Roeglin
or his attorney and does not reflect that either was forwarded a copy.

 On November 15 Universal wrote Roeglin, advising that "Universal . . . has reached
a settlement agreement with Sandra Daves . . . . Universal . . . will receive 90% of the tendered
policy limits of $20,023.00 which equates to $18,020.70." (3) Universal requested a "settlement draft"
and stated it would "execute the appropriate settlement release upon receipt." This letter was not
signed by the Daveses or their attorney and does not indicate that Universal sent them a copy.

 Two months later, on January 16, 2001, Roeglin sent letters to the Daveses and
Universal, each enclosing a proposed "Release and Settlement Agreement," "Agreed Order of
Dismissal," and a check drawn on the account of State and County Mutual Fire Insurance Company,
Roeglin's liability insurance carrier, dated December 12, 2000. The checks were payable $2002.30
to the Daveses and $18,020.70 to Universal. Universal signed a slightly revised settlement
agreement on March 20. The agreement provided signature lines for Sandra Daves, Alfred Daves,
and Universal, as well as signature lines for their attorneys to approve and agree to the document. 
The proposed order provided, inter alia, for the dismissal of all claims by the Daveses and Universal
against Roeglin, and signature lines for the attorneys for all three parties to approve the order.

 On April 2 Roeglin wrote the Daveses, inquiring if there was a problem with the
agreement and when he might expect it to be executed.

 On April 3 at the Daveses' request, Roeglin sent them a copy of the agreement as
signed by Universal and requested that they likewise sign it.

 An April 16 letter from Universal to Roeglin forwards the original agreement and
proposed order of dismissal, signed by Universal.

 The final letter, dated April 25, 2001, from Roeglin's attorney to the Daveses'
attorney, reads as follows:


 I am enclosing a copy of the Release and Settlement Agreement executed by
the authorized representative of Universal . . . .

 You indicated that once [Universal] approved and executed the Release and
Settlement Agreement, that you would have [the Daveses] do likewise. Would you
please have [the Daveses] approve and execute the Release Agreement.


 I am also enclosing a copy of the Agreed Partial Order of Dismissal With
Prejudice. The Order has been approved and signed by [Universal]'s counsel. 
Would you please do likewise.


 After doing so, please return to me the signature pages, along with the
verification pages. I will then combine the signature and verification pages into one
document, returning to you a copy. I will then file the Order with the court and
provide to you a conformed copy.


 Should you have any questions, please do not hesitate to call me.



Neither the Daveses nor their attorney signed any of the documents provided by Roeglin.

 The October 26, 2000 letter was originally filed with the district-court clerk on
November 20, 2000 as a Rule 11 agreement between the Daveses and Universal. The other eight
letters were filed with the clerk on September 13, 2001 as exhibits to Roeglin's motion to enforce
the alleged settlement agreement with the Daveses.

 Relying on Padilla, 907 S.W.2d at 460, and all the letters taken together, Roeglin
asserts that the district court "properly ruled that there was a valid and enforceable Rule 11
agreement whereby the Daveses agreed to settle their claims with . . . Roeglin in exchange for
payment of Roeglin's insurance carrier's policy limits of $20,023."


DISCUSSION AND ANALYSIS

The Daveses' Appeal

 If there is to be a Rule 11 agreement between the Daveses and Roeglin, its substance
must be determined by the October 26 letter between the Daveses and Universal, as the remaining
eight letters are no more than cover letters or attempts by Roeglin to confirm an alleged settlement
between him and the Daveses as described in the initial letter. That letter is as significant for its
exclusions as its inclusions. It is neither addressed to nor contains the signature of Roeglin, his
attorney, or his insurer, makes no reference to the amount of Roeglin's insurance, does not state that
the Daveses will release Roeglin from liability to them, and does not state that the Daveses and
Roeglin are settling their dispute. The letter does not reference a tender of policy limits by Roeglin's
insurer or whether Roeglin has other assets from which either the Daveses or Universal might satisfy
their claims. It does not state that the district-court suit will be dismissed.

 The parties to the letter are the Daveses and Universal. The letter confirms the
settlement of disputes between Universal and the Daveses. The letter, although three pages long,
contains but two references to Roeglin. The first confines the settlement between the Daveses and
Universal to their disputes arising from claims they may have against Roeglin. The second describes
the proportion in which the Daveses and Universal will divide insurance proceeds received from
Roeglin's insurance carrier.

 The supreme court has held that Rule 11 "is a general prerequisite for any judgment
enforcing an agreement touching a pending suit," and means "precisely what it says." Kennedy v.
Hyde, 682 S.W.2d 525, 529 (Tex. 1984); Ebner v. First State Bank, 27 S.W.3d 287, 293 (Tex.
App.--Austin 2000, pet. denied). "A settlement agreement must comply with Rule 11 to be
enforceable." Padilla, 907 S.W.2d at 460 (citing Kennedy, 682 S.W.2d at 528). The court has
analogized the "in writing" requirement of Rule 11 to the statute of frauds. Id. at 460 (citing Tex.
Bus. & Com. Code Ann. § 26.01 (West 1987)). The writing must contain "the essential elements
of the agreement." Id. (quoting Cohen v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978)). Although
the written memorandum must be "complete within itself in every material detail," id., it may be in
multiple documents. Id. (citing Adams v. Abbott, 254 S.W.2d 78, 80 (Tex. 1952)).

 The October 26 letter, standing alone, cannot satisfy Rule 11 because it does not
contain the signature of Roeglin or his attorney. See Tex. R. Civ. P. 11. Likewise, the letter's failure
to address whether the Daveses would release Roeglin from liability and the dismissal of the
Daveses' suit against Roeglin renders it lacking the completeness required by Rule 11. See Padilla,
907 S.W.2d at 460. For there to be a valid and enforceable Rule 11 agreement that will support the
district-court judgment, these elements must be provided by the later letters.

 Initially, we observe that the multiple-writings scenario presented here is much
different from that examined by the supreme court in Padilla. In Padilla, the LaFrances sued Padilla
for damages arising from an automobile collision. Id. at 455. Padilla's insurer assumed defense of
the claims. Id. at 455-56. On April 10 Steidley, the LaFrances' attorney, made written demand on
Chandler, Padilla's attorney, "for policy limits . . . for full and final settlement of this case,"
specifically instructing that the sum should be paid on or before 5:00 p.m. on April 23. Id. at 456. 
Steidley's demand went on to say, "I look forward to receipt of the checks on or before [the] date
specified, failing which this offer to settle will be withdrawn." Id. Chandler forwarded the letter to
Bradshaw, the insurance adjuster handling the claim, who telephoned Steidley's office and advised
of a medical lien "that needed to be cleared up in connection with the settlement." Id. Bradshaw
did not speak with Steidley himself, and called back two more times, each time being told by a
person other than Steidley that "the lien had not yet been resolved." Id. Bradshaw's last call was
the morning of April 23. Id. When he had heard nothing by that afternoon, Bradshaw faxed a letter
to Steidley confirming the settlement agreement whereby the insurer "agreed to meet the policy limit
demands set out in your letter of [April 10]." Id. Bradshaw went on, "I await word from you
regarding the lien so I know to whom to make [the] drafts payable." Id. Before 5:00 p.m., Steidley
faxed Bradshaw, confirming settlement "for all applicable policy limits," requesting that "settlement
checks" be forward to him, and advising that Steidley's "office will . . . take care of the lien . . . out
of the settlement funds forwarded by [Bradshaw's] office." Id. Bradshaw did not see Steidley's fax
until the next morning, April 24. Id. Approximately one week later, Chandler tendered settlement
checks for the policy limits to Steidley, who refused them, "contending that Padilla had not timely
accepted the April 10 settlement offer." Id. at 456-57.

 The supreme court reversed the court-of-appeals judgment affirming the trial-court
holding in favor of the LaFrances, stating that the evidence "established an enforceable settlement
agreement as a matter of law." Id. at 462. Central to the court's holding was the April 23 exchange
of faxes between Bradshaw and Steidley. The court observed that Bradshaw specifically confirmed
a "'settlement agreement' between the parties . . . [but] noted uncertainty as to one detail, payment
of the hospital lien, and requested guidance from Steidley." Id. at 460. The court held that when
Steidley responded that the LaFrances would pay the lien out of the settlement funds, "specifically
stating that '[t]his letter will confirm that the above referenced matter has been settled for all
applicable policy limits . . . ,'" he "assented to Padilla's alteration of the mode of acceptance set out
in Steidley's original offer. Rather than requiring actual payment by a particular deadline, Steidley
accepted Padilla's agreement to pay policy limits as acceptance of his earlier offer." Id.

 The difference between Padilla's facts and those now before this Court are readily
apparent. All of the Padilla correspondence was between the plaintiffs' attorney, on the one hand,
and either the defendant's attorney or his insurer on the other. Here the initial correspondence--the
October 26 letter--was between the attorney for the plaintiffs (the Daveses) and the attorney for the
worker's compensation insurance carrier for one plaintiff's (Alfred Daves's) employer. None of the
following eight letters was signed by the Daveses or their attorney and none reflects an agreement
between the Daveses and Roeglin that the Daveses would accept a specified sum of money from
Roeglin, release him, and dismiss their suit against him.

 The exchange of correspondence among the parties reflects no more than the
following: (1) an agreement between the Daveses and Universal as to how to divide any insurance
proceeds received from Roeglin's insurer (the October 26 letter); (2) Universal's unilateral
notification to Roeglin that it would accept ninety percent of the limits of Roeglin's liability
insurance and settle with Roeglin (the November 15 letter); (3) Roeglin's presumption that the
Daveses would accept the remaining ten percent of Roeglin's insurance and release Roeglin (the
January 16 letters). The remaining letters constitute, at best, only an argument between counsel
concerning whether there was a settlement between the Daveses and Roeglin. The evidence adduced
before the district court at the hearing on Roeglin's motion to enforce the alleged agreement
comprises little more than each attorney's "spin" on the post-January 16 correspondence and what
was said between them regarding it. The elimination of such bickering is the goal of current Rule
11. See Kennedy, 682 S.W.2d at 526-29 (describing history and purpose of Rule 11). We hold as
a matter of law that there is no agreement between the Daveses and Roeglin that satisfies the
requirements of Rule 11.

 Roeglin asserts, however, that equity may excuse strict compliance with Rule 11 to
prevent "an unfair advantage by the violation of such agreement." Williams v. Huling, 43 Tex. 113,
120 (1875). Indeed, this Court has recognized that Williams may provide such an exception. See
Ebner, 27 S.W.3d at 298-99. In Kennedy, the supreme court indicated that an agreement that does
not conform to the requirements of Rule 11 might, for equitable reasons, be enforced because of
fraud or mistake. Kennedy, 682 S.W.2d at 529 (citing Burnaman v. Heaton, 240 S.W.2d 288 (Tex.
1951); Williams, 43 Tex. at 120). In Ebner, we did not explore the possible boundaries of a
Williams-Kennedy equitable exception because the trial court had decided the case on competing
motions for summary judgment. Ebner, 27 S.W.3d at 290. We reversed the trial-court summary
judgment and remanded the cause, specifically noting that the lack of one party's signature on an
alleged Rule 11 agreement could be "urged" at trial. Id. at 304 (citing Williams, 43 Tex. at 120).

 The reporter's record in the case now before us is not lengthy and, as we have
previously noted, consists solely of the testimony of attorneys for Roeglin and the Daveses. It
contains no evidence of fraud, mistake, or unfair advantage, which would allow a court to equitably
provide either the signature or completeness required by Rule 11 and pronounce a settlement
agreement between the Daveses and Roeglin.

 We sustain the Daveses' issue.


Roeglin's Appeal

 Roeglin, analogizing his motion to enforce the alleged Rule 11 agreement to a breach-of-contract suit, also appeals, asserting that the district court erred in failing to award him attorney's
fees. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997) (providing for recovery of 
reasonable attorney's fees for claim based on contract). Because we have held that there was no
agreement between Roeglin and the Daveses, we consider Roeglin's issue no further and overrule
it.

CONCLUSION


 Because we have held that there is no Rule 11 agreement between the Daveses and
Roeglin, we reverse the district-court judgment insofar as it dismisses the Daveses' action against
Roeglin and remand that portion for further proceedings consistent with this opinion; in all other
respects, we affirm the judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed in Part; Reversed and Remanded in Part

Filed: July 26, 2002

Publish 

1. The interlocutory order was signed by Judge Tom McDonald. The severance order was
signed by Judge H.R. Towslee
2. Universal does not appeal. In a March 26, 2002 "Amended Rule 11 Agreement" with the
Daveses, Universal acknowledges that "[t]he insurance carrier of . . . Roeglin has paid Universal . . .
the sum of $18,020.70 in settlement of Universal['s] . . . subrogation claim for injuries caused by
. . . Roeglin to Alfred Daves."
3. Although Alfred Daves had signed the October 26 letter, he was not yet a party to the
litigation. At this time, the only parties to the district-court suit were Sandra Daves, Roeglin, and
Universal. "Plaintiff's First Amended Original Petition," adding Alfred Daves as a plaintiff and
State Farm as a defendant, was not filed until January 4, 2001. This does not affect our
determination of the issues before us.