Affirmed and Memorandum Opinion filed March 4, 2004









Affirmed
and Memorandum Opinion filed March 4, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01139-CV

____________

 

MICHAEL LANDOLT
AND ANN WISMER LANDOLT, Appellants

 

V.

 

DR. STEPHEN FALK
AND WIFE, SHEILA FALK, JOHN O. WILLIAMS, LANDESIGN OF AMERICA, INC., HALFF
ASSOCIATES, INC., HAMID DJAVADZADEH D/B/A SHADE AND SHRUB LANDSCAPING, AND IDEH
DJAVADZADEH D/B/A NASASCAPE, Appellees

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 01-CV-0170

 



 

M E M O R A N D U M   O P I N I O N








This is a dispute between two neighbors
about the placement of a shared stone wall on the property line between their
adjacent lots.  Appellants Michael
Landolt and his wife, Ann Wismer Landolt, filed suit against the appellees
pleading causes of action for breach of contract, negligent misrepresentation,
negligence, trespass, specific performance, conversion and breach of a
settlement agreement.  Appellees raised
the affirmative defenses of mutual mistake, laches, and estoppel.  After a bench trial, the court entered a
take-nothing judgment for all defendants. 
The Landolts appeal the trial court=s findings of fact
and conclusions of law with respect to their causes of action for breach of
contract, trespass, and breach of a settlement agreement.  They do not appeal the trial court=s findings of fact
and conclusions of law with respect to their causes of action for negligence,
negligent misrepresentation, or conversion or their request for relief in the
form of specific performance.  We affirm.

I. 
Factual and Procedural Background

The Landolts and appellees Dr. Stephen
Falk and his wife, Sheila Falk, are adjacent property owners in Kemah,
Texas.  Due to the subdivision=s deed
restrictions requiring a stone wall between adjoining properties, in the fall
of 1999, the Landolts and Falks entered into a handshake agreement to build a
party wall between their two properties and share the costs of the wall=s
construction.  Michael Landolt and
Stephen Falk orally agreed that the wall would be built on the common property
line.  It is undisputed that neither
Michael Landolt nor Stephen Falk knew exactly where the common property line
was.








The Falks contacted appellee John O.
Williams, a landscape architect,[1]
to plan the wall.  Williams had
previously done work for the Falks. 
Williams asked appellee Hamid Djavadzadeh (d/b/a Shade and Shrub
Landscaping)[2]
to bid on construction of the wall. 
Djavadzadeh began the wall=s construction on
January 5, 2000.  Williams testified that
he talked to Michael Landolt in late December 1999, and told him construction
would begin soon.  On January 5, 2000, the
piers for the wall were installed, and the trench for the grade beam was
dug.  On January 6, 2000, the Landolts
received a parcel that contained the plans for the wall and a copy of a letter
to Stephen Falk, dated January 5, 2000, from Williams.  The January 6, 2000 information provided to
the Landolts detailed the wall=s costs, including
a surveying charge in the amount of $125.00. 
The Landolts testified that they assumed a survey was conducted because
of the charge for surveying.  Williams testified
he contacted the surveying company to come out and survey the property.  Both Williams and Djavadzadeh testified they
saw flags on the property, and assumed their purpose was to mark the property
line.  Apparently, the location of the
wall=s centerline was
determined by someoneCit is not clear from the record who did
thisCusing a survey
done in 1987 by H&M Surveying. 
Construction of the wall resumed, and the wall was built on the flags= location.  The wall is eight inches thick, runs 60 feet,
and has 16-inch thick columns placed every eight feet.  The cost to construct the wall was
approximately $23,000.00.  The Landolts
paid for one-half of the wall=s
construction.  After the completion of
the wall, the Falks expended additional monies in completing landscaping,
lighting, and applying other finishing touches (paint and stucco) to their side
of the fence, totaling $16,000 to $18,000, plus spent $30,000 installing a
driveway.

In July of 2000, the Landolts hired
another surveying firm to conduct a survey of their property as part of their
putting another wall on their property line adjacent to the neighbor=s property.  The Landolts were told that the center of the
wall adjoining the Falks= property was not centered on the common
property line.  The record reflects that
the wall is on the property line for the most part, except for a one-inch
deviation at the end of the wall, but the entirety of the wall is not centered
on the property line at both ends. The wall is about one inch off the property
line at one end and about seven inches off center at the other end;
approximately twenty square feet more of the Landolts= property is
covered by the wall than was intended. 
The deviation of the wall=s center from the
property line is less than the total width of the wall, considering the width
of the 16-inch columns spaced every eight feet.

Michael Landolt testified that it would
cost $50,000 to $60,000 to remove the wall. 
The record reflects that the total cost to remove the current party wall
and rebuild it, as well as to remedy all damage to the Falks= property caused
by the removal of the wall (e.g., replacing portion of the driveway, irrigation
system, lighting, and landscaping on the Falks= side of the
fence) would be approximately $150,000, compared to the current wall=s construction
costs of approximately $23,000.








During Michael Landolt=s deposition taken
during the pendency of this lawsuit, the Falks= counsel made a
statement, which the Landolts= counsel
apparently construed as a settlement offer. 
The Landolts= counsel sent two letters to counsel for
the Falks, one of which was a Rule 11 letter agreement, responding that the offer
was accepted and that he would prepare settlement papers.  The trial court concluded there was no
settlement agreement.  Other findings of
fact and conclusions of law relevant to this appeal will be discussed in more
detail below.

II. 
Standard of Review

The trial court=s findings of fact
are subject to review for legal and factual sufficiency in the same manner as
jury findings.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  We
defer to the trial court=s factual determinations if they are
supported by the evidence.  Id.  When a party attacks the legal sufficiency of
an adverse finding on an issue on which he has the burden of proof, he must
demonstrate on appeal that the evidence establishes, as a matter of law, all
vital facts in support of the issue.  Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). We must first examine
the record for all evidence that supports the finding, while ignoring all
evidence to the contrary.  Id.  If there is no evidence to support the
finding, the reviewing court will then examine the entire record to determine
if the contrary proposition is established as a matter of law.  Id. 
When a party attacks the factual sufficiency of an adverse finding on an
issue on which he has the burden of proof, he must demonstrate on appeal that
the adverse finding is against the great weight and preponderance of the
evidence.  Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983).  We must
consider and weigh all of the evidence, and can set aside a finding only if the
evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986).








The trial court=s conclusions of
law are reviewed de novo as legal questions. 
Precast Structures, Inc. v. City of Houston, 942 S.W.2d 632, 636
(Tex. App.CHouston [14th Dist.] 1996, no writ)
(citing State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996)).  Conclusions of law will be upheld on appeal
if the judgment can be sustained on any legal theory supported by the
evidence.  Kotis v. Nowlin Jewelry,
Inc., 844 S.W.2d 920, 922 (Tex. App.CHouston [14th
Dist.] 1992, no writ).  When the trial
court=s findings involve
questions of law and fact, the appellate court reviews the trial court=s decision for an
abuse of discretion.  Remington Arms
Co. v. Luna, 966 S.W.2d 641, 643 (Tex. App.CSan Antonio 1998,
pet. denied).

III. 
Analysis

In six issues, the Landolts contend the
trial court erred in (1) striking Ann Landolts= testimony about
her property=s market value, (2) characterizing the
injury to the Landolts= property as permanent, (3) granting
judgment in favor of the Falks on the Landolts= breach of
contract claim, (4) granting judgment in favor of all appellees= on the Landolts= trespass claim,
(5) finding that the doctrine of laches applied to the Landolts= causes of action,
and  (6) finding that there was no valid
settlement agreement between the Falks and the Landolts.

A.  
Settlement Agreement

Because it would dispose of all issues if
the parties had an enforceable settlement agreement, we first address the
Landolts= sixth issue.  The Landolts complain that the trial court
erred in finding that the parties had not entered into a valid settlement
agreement with the Falks.

During the deposition of Michael Landolt
in January of 2002, the Falks= counsel, Richard
Morrison, made the following statements in the context of other questions
regarding the removal of the wall and where it would be placed if
reconstructed:

Q.:  We will tear it [wall] down and remove that
wall entirely and we=ll build one on our side and you
can build one on your side, if you want to do that; but it is going to take up
more land from your property so that you will be prohibited from building that
fancy new addition you want to build. 
Because it is going to take up more and you are going to have to move it
further to the west. 

. . . 








Q.: 
Now, think about that.  That=s all I have.  Think about that.  Use your head.

After the deposition, counsel for the
Falks, Kenneth Kaye, sent a letter to Morrison, stating, APlease be advised
that following six (6) months of your receipt of this letter, Mr. and Mrs.
Landolt will remove the wall separating the two properties.@  Two days later, Kaye sent Morrison another
letter, contending the above-quoted statement made by Morrison during the
deposition was a settlement offer and stating that his clients accepted the
offer and he would prepare the necessary settlement papers.  Morrison responded two days later, denying
that his statement was an offer of settlement. 
At trial, Dr. Falk also testified that he had not granted his attorney
authority to make a settlement offer and denied that a settlement offer had
been made during the deposition of Landolt. 
In their brief filed with this court, the Falks state that on March 11,
2002, Kaye filed a Rule 11 letter agreement with the trial court but that
neither party nor their counsel signed it, and the document is not in the
record before this court.  The trial
court concluded that there was no evidence of a contractual settlement
agreement or any kind of settlement agreement between the Falks and Landolts
with respect to the claims underlying this lawsuit.








As the Texas Supreme Court made clear in Kennedy
v. Hyde, 682 S.W.2d 525 (Tex. 1984), Rule 11 of the Texas Rules of Civil
Procedure requires settlement agreements to be in writing, signed, and filed
with the papers as part of the record.  Id.
at 529.  This lawsuit invokes the policy
considerations emphasized by the court in KennedyCAThe reason for
Rule 11 is clear.  As already observed,
oral agreements concerning suits >are very liable to
be misconstrued or forgotten, and to beget misunderstandings and controversies.=@  Id. (quoting Birdwell v. Cox,
18 Tex. 535, 537 (1857)).  There is no
settlement agreement in writing in this case, and the deposition transcript
does not satisfy the Ain writing@ requirement of Kennedy
because it does not contain all material terms of the parties= alleged
settlement agreement or reflect an agreement at all.[3]  See, e.g., Alcantar v. Oklahoma Nat=l Bank, 47 S.W.3d 815,
820 (Tex. App.CFort Worth 2001, no pet.) (A[A] settlement
agreement is unenforceable unless it complies with Rule 11, regardless of
whether the parties have orally announced the terms of their agreement to the
trial court.@); cf. Padilla v. LaFrance, 907
S.W.2d 454, 460B61 (Tex. 1995) (holding that series of
letters between counsel for parties reflected all material terms of parties= agreement,
thereby satisfying Ain writing@ requirement, and
constituted enforceable settlement agreement).[4]  In the absence of a writing, whether in one
Rule 11 letter or multiple letters, reflecting all material terms of a
settlement agreement agreed upon by the parties, there is no enforceable
settlement agreement in this case. 
Accordingly, we overrule the Landolts= sixth issue.

B.  
Breach of Contract








In their third issue, the Landolts contend
the trial court=s judgment is in error because the evidence
conclusively establishes the Falks breached the parties= oral
contract.  In its findings of fact, the
trial court found that (1) the ALandolts and the
Falks agreed to build a party wall between their lots with its centerline on
their common property line, so that a portion of the wall would be on each of
their property [sic];@ (2) A[t]here was no
agreement between the Plaintiffs and the Falks as to where the common boundary
line was actually located;@ (3) A[a]s part of the
authorization to construct the party wall, the Landolts and the Falks
authorized defendants Williams and Halff to determine the location of the
common property line; and (4) A[t]he Falks never
represented to the Landolts that the party wall was being constructed on the
property line.@ 
The trial court further found that the Falks and Landolts both
authorized the defendant contractors to enter their properties for the purpose
of constructing the party wall, the Falks never represented to the Landolts
that a survey had been done, the Falks believed that surveying was performed in
connection with the construction of the wall, the centerline of the wall is on
the property line as established by the H&M survey, but the H&M survey
relied upon by the contractors was in error.

In its conclusions of law, the trial court
concluded that the Landolts and Falks had entered into a contract to construct
a party wall on their common property line, that the contract did not require
either party to determine the correct location of their common property line,
and neither the Landolts nor the Falks had a contractual duty to cause a survey
to be done prior to building the wall. 
The trial court further concluded that the Falks did not breach the
contract with respect to the location of the party wall and that the Landolts
did not suffer any damage or injury as a result of any alleged breach of
contract.

In Texas, the essential elements of a
breach of contract action are (1) the existence of a valid contract; (2)
performance or tendered performance by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages sustained by the plaintiff as a
result of the breach.  Frost Nat=l Bank v. Burge, 29 S.W.3d 580,
593 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  AWhen the evidence
is undisputed regarding a person=s conduct under a
contract, the court as a matter of law determines whether the conduct shows
performance or breach of a contract obligation.@  Valero Mktg. & Supply Co. v. Kalama
Int=l, 51 S.W.3d 345, 351 (Tex. App.CHouston [1st
Dist.] 2001, no pet.) (citing Lafarge Corp. v. Wolff, Inc., 977 S.W.2d
181, 186 (Tex. App.CAustin 1998, pet. denied)).  AThe meaning given
to the language in a contract is, of course, a question of law for the court.@  Bank One, Texas, N.A. v. Stewart, 967
S.W.2d 419, 432 (Tex. App.CHouston [14th
Dist.] 1998, pet. denied) (also stating Awhether a party
has breached a contract is a question of law for the court and not a question
of fact for the jury@).








Michael Landolt testified that his
agreement with the Falks did not require either party to locate the property
line.  He also testified that he did not
know whether the Falks caused the wall not to be located on the property line
or failed to comply with the agreement. 
He further testified that he did not know of anything the Falks did that
failed to comply with their handshake deal to locate the wall on the center of
their shared property line.  He further
testified that neither the Landolts nor the Falks had any responsibility under
the agreement to perform a survey to locate the common boundary line.

Dr. Falk also testified that neither he
nor Landolt agreed to cause a survey to be done prior to the construction of
the wall and that neither he nor Landolt was responsible, under the terms of
their handshake deal, to ensure or guarantee that the wall was built on the
property line.  Thus, there is no
evidence that the parties= oral agreement contained a provision as
to where the common boundary line was located or that either party had the
responsibility of locating the common boundary line, or that the Falks, as
opposed to the Landolts, had a duty to erect the party wall on the property
line.  Dr. Falk testified that he and
Michael Landolt agreed that the wall would be built on the property line and
that they would share the construction costs equally.  In conclusion, the evidence is legally
sufficient to support the trial court=s fact findings
and conclusion that the Falks did not breach the parties= oral
agreement.  For the same reasons, we also
hold the evidence was factually sufficient to support the trial court=s findings of fact
and conclusions of law with respect to the Landolts= breach of
contract claim.  Accordingly, we overrule
the Landolts= third issue.  Because of our disposition of the Landolts= third issue, we
need not decide whether the trial court correctly decided that the Falks proved
the affirmative defenses of laches, mutual mistake, or estoppel.

C.  
Trespass








In their fourth issue, the Landolts
contend the trial court erred because the evidence conclusively establishes the
wall encroaches on their property, and thus, they have established their claim
of trespass as a matter of law.  The
trial court made the following findings of fact relevant to the Landolts= trespass claim:
(1) the Landolts and the Falks authorized the contractor defendants to enter
their respective properties for the purpose of constructing the party wall; (2)
the north end of the wall is seven inches off center from the true property
line, with more of it on the Landolts= property than on
the Falks= property; (3) the party wall covers
approximately 20 square feet more of the Landolts= property than was
intended by the Landolts and the Falks; (4) the party wall cannot be removed
without damaging or destroying the stucco finish, landscaping, irrigation
system, vegetation, lighting, and driveway on the Falks= property; (5)
none of the defendants assumed and exercised dominion and control over any of
the Landolts= property in an unlawful and unauthorized
manner, to the exclusion of and inconsistent with the Landolts= rights to that
property; and (6) placement and construction of the wall was a mutual
undertaking by the Landolts and the Falks.

The trial court also issued the following
conclusions of law: (1) any damage to the Landolts= property caused
by the presence of the party wall would be characterized as permanent damage,
but the Landolts were not permanently damaged by the party wall; (2) the
Landolts= full use of their
property in terms of the design of buildings and other improvements has not
been limited in any way; (3) it is not economically feasible to remove the
party wall, and the cost of tearing down the wall and rebuilding compared to
any damage to the Landolts is de minimus and would result in economic
waste; (4) the continued presence of the Landolts= portion of the
wall on their own property does not constitute a trespass by any of the
defendants; and (5) the Landolts= property and
their portion of the party wall is encumbered with an easement of servitude in
favor of the Falks, and it may afford support to and maintenance of the Falks= portion of the
party wall.

ATrespass to real
property occurs when a person enters another=s land without
consent.@  General Mills Rest., Inc. v. Texas Wings,
Inc., 12 S.W.3d 827 (Tex. App.CDallas 2000, no
pet.) (citations omitted).  The record in
this case clearly reflects that the Landolts granted consent to the Falks and
the other appellees to enter their property for the purpose of constructing the
wall.  The more precise issue before this
court is whether the wall=s additional encroachment onto the
Landolts= propertyCwithout any
corresponding gain of real property by the FalksCis a
trespass.  Texas law pertaining to party
walls is well established, with the following rule being first announced in
1912:








A party wall need not necessarily
be upon both sides of the division line equally, and it may be . . . altogether
upon the property of one of the owners. 
The right of each adjoining owner to the use of a party wall erected for
the use of both is to the use of the wall and to an easement of the other=s ground for the purposes of the
wall . . . . [T]he adjoining owners are not joint owners or tenants in common
of the party wall.  Each is possessed in
severalty of his own soil up to the dividing line and of that portion of the
wall which rests upon it; but the soil of each, with the wall belonging to him,
is burdened with an easement or servitude in favor of the other, to the end
that it may afford a support to the wall and buildings of such other.

Evidence, therefore, that a wall was constructed by
adjoining owners as a party wall, without evidence of an agreement between them
as to the division line, is not sufficient to change the true boundary
line.   

Fewell v. Kinsella, 144 S.W. 1174, 1178 (Tex. Civ.
App.CSan Antonio 1912,
writ ref=d).  An agreement to erect a party wall equally on
two adjacent properties creates reciprocal easements in favor of each owner=s lot in favor of
the other landowner for support of the wall; each lot is burdened with such an
easement.  See McCormick v. Stoneheart,
195 S.W. 883, 884 (Tex. Civ. App.CAmarillo 1917,
writ ref=d) (AThis
cross-easement was created for the benefit of both lots, in that a saving of
space, as well as the expense of erection of one wall, was thereby made.@).  We agree with the trial court that the
Landolts and Falks have a party wall, and each property is burdened by an
easement of support in favor of the adjacent property.  As a matter of law, the wall does not
trespass on the Landolts= property. 
Accordingly, we overrule their fourth issue.

Because of our disposition of the Landolts= third and fourth
issues, we need not address their first, second and fifth issues.  Having concluded that the Falks did not
breach their contract with the Landolts and that none of the appellees
committed a trespass onto the Falks= property, we
affirm the trial court=s judgment.

 

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Memorandum Opinion filed March 4, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  Williams had previously owned his
own company, Landesign of America, Inc., and joined the firm of Halff
Associates, Inc. before October or November 1999.





[2]  Appellee Ideh
Djavadzadeh is the wife of Hamid Djavadzadeh. 
The Landolts have not alleged that Ideh did or did not do anything.  The Landolts apparently contend that Hamid
was doing business as Shade and Shrub Landscaping and doing business as
NasaScape, a company with which his wife was affiliated.





[3]  The Landolts
do not contest the requirement that settlement agreements must be in writing,
but they argue that Kennedy does not apply because the reasoning of the
court in that opinion only applied to disputed settlement agreements, and here,
the Landolts accepted the settlement offer made by the Falks before it was
disputed.  This tenuous distinction is
not supported by KennedyCone party said the parties had an oral settlement
agreement and another disputed that they had finalized an agreement.  And in any event, the Falks immediately
disputed that they had made a settlement offer.





[4]  Furthermore, we agree with the
Falks that a plain reading of the statements made by their counsel prior to the
portion relied upon by the Landolts reflects that their counsel never made an
oral settlement offer.  He instead was
merely emphasizingCwith some sarcasm that may not be
readily apparent from reading only the quoted portion of the deposition cited
by the FalksChis perception that the Landolts
were being unreasonable in their complaints about the placement of the wall.